IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Antonio Arias, son of the late Antonio Arias, Decedent.<br><br>  Plaintiffs<br><br>       Vs.<br><br>Hogar Loma Linda, Inc.; Fernando Fiqueroa Neváres; his wife Jane Doe; and the conjugal partnership established between them; Mary Doe, her husband "John Doe"; and the conjugal partnership established between them; Dr. Cecilio Hernández; his wife Jane Doe 1; and the conjugal partnership established with her; METRO PAVIA HEALTH SYSTEM INC d/b/a HOSPITAL METROPOLITANO; DR. John Roe; his wife Jane Doe 2; and the conjugal partnership established with her; "Richard Roe"; "A-B-C" Corporations; "X-Y-Z" Insurance Companies; as well as any other Joint Tortfeasors and their respective Insurance Companies<br><br>  Defendants | CIVIL NO.:<br><br>Wrongful Death; Tort Claim For Damages;<br>Negligence Under<br>31 L.P.R.A. §5141 & 5142<br>28 U.S.C. 1332<br>Plaintiffs Demand Trial By Jury |

**COMPLAINT**

Come now plaintiff, through his undersigned attorneys, and very respectfully states and prays as follows:

**STATEMENT OF THE CASE**

This is an action for damages arising out of the negligent and tortuous acts and/or omissions committed by defendants and their insurance companies for such other relief as this Court

1

may deem appropriate, including the payment of costs, interests and attorneys' fees.

## I. THE PARTIES

1.1 Plaintiff, Antonio Arias Muñoz (hereinafter "Mr. Arias"), is of legal age and resident of New Jersey.

1.2 To the best of plaintiffs' knowledge, information and belief, defendant Hogar Loma Linda, Inc. (hereinafter referred to as "HLL"), is a business entity organized and existing under the laws of the Commonwealth of Puerto Rico, and according to information and belief its physical address is Barrio Camarones, Pedro Reyes Sector, #20 Damasco St., Guaynabo, Puerto Rico.

1.3 Defendant HLL operates a 24 hour a day facility for the Care of Elderly and Special Needs Persons licensed by the Office of Licensing of the Commonwealth of Puerto Rico's Department of Family Affairs, specifically through license #079.

1.4 To the best of plaintiff's knowledge, information and belief, defendant Fernando Fiqueroa Neváres, was the owner and administrator of the Hogar Loma Linda, Inc., and is married to defendant Jane Doe, and together with her constitute a conjugal partnership.

1.4 To the best of plaintiff's knowledge, information and belief, defendant Mary Doe, was an administrator of the HOGAR LOMA LINDA, INC., is married to defendant John Doe 1, and together with him constitute a conjugal partnership.

1.5 Defendant Doctor Cecilio Hernández (hereinafter referred to as "Hernández"), is a medical doctor, married to defendant Jane Doe 1 and together with her constituting a conjugal partnership. Dr. Hernández has privileges with and/or offers medical services in Hogar Loma Linda and diagnosed and/or medically treated decedent Antonio Arias.

1.6 Defendant Metro Pavia Health System Inc. doing business as Hospital Metropolitano, (hereinafter referred to as "HM") is a corporation organized under the laws of the Commonwealth of Puerto Rico, which has its principal place of business in San Juan, Puerto Rico.  HM is the owner and/or operator of a hospital of the same name located in San Juan, Puerto Rico.

1.7 Defendant doctor John Roe, is a medical doctor, married to defendant Jane Doe 2 and together with her constituting a conjugal partnership.  Dr. Hernández has privileges with and/or offers medical services in HM and diagnosed and/or medically treated decedent Antonio Arias.

1.9 Defendant, Richard Roe, is an individual known to exist and to have operated or contributed to the facts and events for which defendants are liable under the various causes of action herein averted, but whose real name is yet unknown to plaintiffs.

1.10 Defendants, "A,B,C" Corporations, are business

3

entities, presently unknown, who upon information and belief are liable and responsible for plaintiff's damages.

1.12 Defendants, "X,Y,Z" Insurance Companies are insurance companies, presently unknown, who are believed to provide named and unnamed defendants with liability insurance during the applicable time period.

## II. JURISDICTION AND VENUE

2.1  This case is filed under 28 U.S.C. 1332 because of diversity jurisdiction inasmuch this is a case or controversy between citizens of different states and the amount in controversy is in excess of seventy five thousand dollars ($75,000.00) exclusive of interest and costs.

2.2  The District Court for the District of Puerto Rico is an appropriate venue pursuant to 28 U.S.C. 1391 (A) inasmuch a substantial part of the relevant events occurred in this venue.

## III. GENERAL ALEGATIONS

3.1  Plaintiffs reaffirm and reproduce as if alleged herein each and every one of the preceding allegations.

3.2  On January 9, 2017, decedent Mr. Antonio Arias López (en adelante "Mr. Arias-López"), represented by his son plaintiff Antonio Arias Muñoz, executed a services contract with defendant HLL.

3.3  In the referenced contract HLL obliged itself to,

among others, the following duties: daily attention on a 24 hour basis to the basic and/or particular necessities; provide a balanced diet certified by a nutritionist; bathing in varying schedules and out of normal hours if necessary; personal hygiene as many times as necessary. In addition, HLL obliged itself to coordinate ambulance services, monthly medical care or in accordance with the necessities of the resident; therapies at medical agencies as recommended by the resident's physician, among others.

3.4 On January 9 2017 Mr. Arias López checked in as a resident of HLL.

3.5 Mr. López Arias' intake report in his record of that day with HLL reflected that he had a generalized muscular difficulty and in his legs and arms, difficulty walking, therefore, requiring physical and occupational therapies, he was also deemed 100% dependent.

3.6 From January 9, 2017 on Mr. Arias López health deteriorated rapidly due to lack of adequate care by defendants, ultimately leading to his death on June 30, 2017.

3.7 According to his record at HLL Mr. Arias López was never provided physical and occupational therapies while under the care of HLL.

3.8 On April 20th, 2017 defendant Dr. Cecilio Hernández was consulted due to the fact that Mr. Arias López had a hematoma of

significant size around his left elbow, intense pain and inflammation in the distal part of the left shoulder, where he had spontaneous pain upon the slightest movement.

3.9 Defendant Dr. Hernandez then ordered that Mr. Arias López visit an emergency room and to get x-rays to verify if he did not have a fractured shoulder.

3.10 However, HLL never provided information regarding the results of the x-rays nor what triggered the need for them.

3.11 On May 8, Dr. Hernández ordered Mr. Arias López a second consultation with an orthopedist. There is no evidence in the HLL file that this was ever done.

3.12 On May 15, 2017, Mr. Arias López was taken by the staff of the HLL to the HM, where he was admitted for pneumonia.

3.13 On June 21, 2017, Mr. Arias López was discharged from the HM. On June 22, 2017, the HLL staff picked up Don Antonio at the HM.

3.14 31. That day, plaintiff Antonio Arias spoke with the defendant Mr. Figueroa and he informed him that he received Mr. Arias López with ulcers. The plaintiff asked him to send photos of them.

3.15 On June 23, 2017, the plaintiff, Mr. Antonio Arias Muñoz, asked the HLL to re-refer his father to the Emergency Room for ulcers. However, it was not done.

3.16 On June 22 and 23, 2017, Dr. Cecilio Hernández, who

6

attended Mr. Arias López at the HLL wrote the following notes:

    a. June 22: "Patient on arrival from the Hospital where he was for a month and a half we found multiple ulcers grade 3: in the sacrum (1 ulcer, 10 x 7 centimeters, grade 3), in the buttocks (2 ulcers), in the penis (2 ulcers), in heels (2), [...] prostrate in bed, and strong polyarticular pain. I urgently request an application for ulcer healing at home and urinary catheter placement. Alert and communicative. Intense pain, Pain level 10. Gastritis. He was ordered laboratories, cbc, and ulcer care every day."

    b. June 23: "I hereby certify that the patient presents multiple bed sores with cellulitis around the two ulcers of both heels. It also presents urinary incontinence and severe dysphagia so it has not ingested anything liquid since it came from the hospital (where they developed such ulcers). For the above I request to place nasogastric, healing ulcers, and urinary catheter. It is consulted to debride ulcers, finding marked cellulitis around the ulcers of both heels, which debride soft tissue that covers ulcer in both heels. It also presents necrosis with possible gangrene. Alert, communicative disoriented in time, responds, pain level 8. Fourth and Fifth left foot completely necrotic."

    3.17 However, the HLL did not take the proper action to

deal with the situation. Despite the medical orders of defendant Dr. Cecilio Hernández regarding the treatment to be followed to cure ulcers, the HLL's file has no evidence of ulcer healing, the progress of the ulcers and who performed the cures.

3.18 On June 26, 2017, HLL's personnel brought Mr. Arias López back to the HM Hospital due to pneumonia.

3.19 It is alleged that the HLL staff took him to the Hospital and left him there alone. HLL provided no staff, employee, manager, health care professional to assist Mr. Arias López at the HM.

3.20 On June 30, 2017 Mr. Arias López was pronounced dead at the HM.

3.21    The decedent, Mr. Arias López lost his life due to the intentional, reckless, grossly negligent, and/or negligent failure and refusal of the defendants, through their authorized agents and representatives, to provide Mr. Arias López, with adequate medical assistance in response to his wellbeing in the present case and/or preventive care, even willful endangerment.

## IV. COUNT ONE
### (Wrongful Death- 31 L.P.R.A. §5141)

4.1 Plaintiff reaffirms and reproduces as if alleged herein each and every one of the preceding allegations.

8

4.2 Defendants through their authorized agents and representatives caused the wrongful death of decedent, Mr. Arias López by failing to provide adequate care and proper medical assistance.

4.3 As a direct result of the negligent acts or omissions of defendants, through their authorized agents and representatives, plaintiff has suffered mental, emotional and economical damages. Therefore, plaintiff is entitled to relief against defendants, jointly and severally, as pleaded below.

## V. COUNT TWO
### (Negligence- 32 L.P.R.A. §5141 & §5142)

5.1 Plaintiff reaffirms and reproduces as if alleged herein each and every one of the preceding allegations.

5.2 The negligent conduct of defendants, through their authorized agents and representatives, in willfully breaching its duty of care to the Decedent, has caused plaintiffs great mental pain and suffering in violation of 31 L.P.R.A. § 5141 & 5142.

5.3 According to the minimum standard of medical care required, the physician should offer the patients such medical care, that in the light of modern means of communication and teaching and according to the state of knowledge of the prevailing science and practice of medicine, meets the requirements generally recognized by the medical profession

9

itself. López v. Dr. Cañizares, 163 D.P.R. 119 (2004); Santiago Otero v. Méndez, 135 D.P.R. 540, 549 (1994).

5.4  The physician has the duty to learn about the symptoms and the condition of the patient, exhausting the means of differential diagnosis that the state of knowledge makes available to the medical profession.

5.5  A treatment that subjects a patient to unnecessary and foreseeable risks cannot be considered reasonable when there are alternative means to avoid or diminish them.

5.6. The right of every patient to self-determination, that is, to freely decide what should be done with their body, should be protected by the courts. This generally implies the patient's prior informed consent to surgical intervention and/or treatment. Sepúlveda de Arrieta v. Barreto, 137 D.P.R. 735, 742 (1994).

5.7  A doctor has a duty to provide patients with sufficient information about the nature of their treatment, the risks and complications involved, and the benefits expected. Ríos Ruiz v. Mark, 119 D.P.R. 816, 828 (1987).

5.8  All defendants had a duty to provide medical care to Mr. Arias López that complied with the applicable standards of the medical profession. Notwithstanding, defendants breached said duty as set forth above.

5.9  HLL and HM, their medical staff, therapists, nurses

10

and management were the individuals called to provide an adequate evaluation and treatment to Mr. Arias López

5.10    The medical staff included herein as defendants were negligent in the diagnosis and treatment offered to Mr. Arias López. As a result, Mr. Arias López was submitted to severe, painful and unnecessary sufferings, by not taking steps to avoid and to treat his symptoms. Therefore, they are jointly and severely responsible for the damages suffered by the plaintiff.

5.11 The defendants did not obtain the informed consent of Mr. Arias López representatives for his treatment, because they did not explain the nature of the situation, available treatments, the risks and the complications involved.

5.12 Defendants HLL and HM are further vicariously liable for the negligent acts and/or omissions incurred by the medical, nursing and other staff which intervened in the diagnosis and treatment of Mr. Arias López, included as defendants herein, and for its own negligence in the selection, monitoring, supervision and granting of privileges to said doctors and other staff.

5.13 The plaintiff suffered physiological and emotional damages as his father quickly deteriorated, desperate and frustrated, caused the plaintiffs mental anguish and sufferings.

5.14 As a result, the defendants jointly and severely are responsible for: 1) all the emotional damages suffered by

11

plaintiff; 2) the medical, hospitalization and treatment procedures expenses they had to incur; 3) the economic losses the plaintiffs experienced; 4) the serious suffering and mental anguish; 5) and any other damage suffered as a result of defendants negligent acts and/or omissions, which are all estimated in the amount of $5,000,000.00.

## VI. CAUSE OF ACTION AGAINST DEFENDANTS, "A, B, C" CORPORATIONS

6.1  Plaintiffs reaffirm and reproduce as if alleged herein each and every one of the preceding allegations.

6.2  Defendants "A, B, C" Corporations through its acts or omissions caused damages to Plaintiff through fault or negligence in violation of 31 L.P.R.A. § 5141.

6.3  Defendants "A, B, C" Corporations are business entities, presently unknown, who upon information and belief are liable and responsible for plaintiff's damages inasmuch they caused the death of Mr. Arias López object of this complaint.

6.4  As a direct result of the negligent acts or omissions of defendants "A, B, C" Corporations, plaintiff was injured and mental, emotional and economical damages were also suffered.

## VII. CAUSE OF ACTION AGAINST DEFENDANTS "X, Y, Z" INSURANCE COMPANIES

7.1. Plaintiffs reaffirm and reproduce as if alleged herein each and every one of the preceding allegations.

12

7.2 All defendants at the moment of the accident had insurance policies with its respective insuring companies which are mentioned in the caption, which cover the damages suffered by plaintiff. Said policies were in full effect at the time the events mentioned in the complaint, reason why these insuring companies are jointly responsible for these damages.

7.3 The insurance companies of any named or unnamed defendants, the "X, Y, Z" Insurance Companies, are directly liable for the fault or negligence of their insured parties pursuant to 26 L.P.R.A. § 2001.

7.4 Pursuant to 26 L.P.R.A. § 2003, an action against an insurer may be brought separately or may be joined with an action against the insured.

## VIII. DAMAGES

8.1 Plaintiff reaffirms and reproduces as if alleged herein each and every one of the preceding allegations.

8.2 As a direct result of the acts or omissions of defendants, plaintiff has suffered damages which include mental injuries, mental and emotional anguish, ongoing pain and suffering, and economic losses.

8.3 Plaintiff's compensatory damages for his past and future emotional distress, and mental anguish, loss of society, companionship, comfort and/or protection, loss of parental care,

13

attention, advise and/or guidance have a reasonable value of not less than Five Million Dollars ($5,000,000.00).

### IX. DEMAND FOR JURY TRIAL

9.1  Plaintiff demands a trial by jury of all causes of action.

### PRAYER

WHEREFORE, Plaintiff respectfully demands judgment against Defendants, jointly and severally, in the amount of no less than Five Million Dollars ($5,000,000.00) as well as costs incurred, reasonable attorneys' fees, interests and such other relief as this Honorable Court may deem just and proper under the circumstances.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 2nd day of July, 2018.

**NOLLA, PALOU & CASELLAS, LLC**
Attorneys for the Plaintiff
PO Box 195287
San Juan, PR 00919-5287
Tel. 787-625-6535
Fax. 787-625-6530

s/José A.B. Nolla-Mayoral
U.S.D.C. No. 209813
jan@npclawyers.com